| | | |
|---|---|---|
| KEITH ELLIS, | ) | |
| Plaintiff | ) | C.A. No. 08-160 Erie |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | Chief Magistrate Judge Baxter |
| UNITED STATES OF AMERICA, et al., | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.      RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [Document # 20] be granted in part and denied in part.

## II.      REPORT

### A.      Relevant Procedural History

On May 27, 2008, Plaintiff Keith Ellis, a Sunni Muslim and former inmate incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean"), filed this *pro se* civil rights action.  Named as Defendants are:  the United States of America ("United States"); Edward Roberts, the Federal Bureau of Prison's Northeast Regional Religious Service Administrator ("Roberts"); James Sherman, former Warden of FCI McKean ("Sherman"); S.L. Robare, Assistant Warden at FCI McKean ("Robare"); Jan C. Olowin, former Supervisory Chaplain at FCI McKean ("Olowin"); Brian Grimm, Chaplain at FCI McKean ("Grimm"); Gerald Desio, Food Service Supervisor at FCI-McKean ("Desio"); Michael Baldensperger, Trust Fund Supervisor at FCI McKean ("Baldensperger"); Tina Murphy Gee, former Unit Manager at FCI McKean ("Gee"); Gary Buck, Counselor at FCI McKean ("Buck"); and Monica Recktenwald, Administrative Remedy Coordinator at FCI-McKean ("Recktenwald").

In his Complaint, Plaintiff asserts statutory claims under the Federal Tort Claims Act

1

("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5; the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4; and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551-702; as well as *Bivens* claims citing violations of the First Amendment's Establishment Clause and right to free exercise of religion, violations of his Fifth Amendment rights to Due Process and Equal Protection, and retaliation. In particular, Plaintiff alleges that Defendants denied Halal meat for a ceremonial Muslim feast on January 10, 2006, and removed his name from the call-outs for the 2006 Eid-ul-Adha holy day celebration and Jumah prayer. (Complaint at ¶¶ 4.2-4.14, 4.32-4.38). In addition, Plaintiff claims that Defendants interfered with his access to the administrative remedy process (Complaint at ¶¶ 4.26-4.31), and he challenges FCI-McKean's policy of selling scented oils used in Muslim prayer services through the Commissary, rather than the special purchase order program. (Complaint at ¶¶ 4.43-4.49). As relief for his claims, Plaintiff seeks monetary damages.

Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment [Document # 20], in response to which Plaintiff has filed an opposition brief. This matter is now ripe for consideration.

### B.    Relevant Factual History

On or about October 9, 2005, Plaintiff and other Sunni Muslim inmates at FCI McKean ("Sunni inmates") submitted an Inmate Request to Defendant Olowin requesting that Halal lamb be served at their Eid-ul-Adha ("Eid") celebration in January 2006.[1] (Complaint at Exhibit A). After this request was apparently denied, Plaintiff submitted a second request to Defendant Olowin, dated November 10, 2005, requesting to have Halal beef, rather than Halal lamb, served at the Eid celebration, since the beef was available on the Institutional and/or Certified Menu.

---

[1]

Plaintiff, along with several other Sunni Muslim inmates, filed nearly identical claims in a previous lawsuit having to do with the January 2005 Eid celebration. That case was dismissed on February 23, 2009.

(Complaint at ¶ 4.5 and Exhibit A1). The next day, Plaintiff and the Sunni inmates met with Defendants Olowin and Grimm, at which time the Defendants allegedly agreed to have Halal beef served at the Eid celebration, and further agreed to ensure that all participating inmates were on the Religious Diet Program for the day of the Eid celebration. (Complaint at ¶ 4.6). At this meeting, Plaintiff also requested a written response to the Inmate Request to Staff dated October 9, 2005, so that he would have a documented reason why Defendants denied the Halal lamb. (Id.).

On November 18, 2005, Plaintiff and the Sunni inmates again met with Defendants Olowin and Grimm to discuss the January 2006 Eid celebration, at which time Defendant Olowin allegedly informed Plaintiff that Halal beef was approved for the ceremonial meal. (Complaint at ¶ 4.9). However, on January 10, 2006, the day the Eid celebration was scheduled to be held, Plaintiff alleges that "the Defendants refused to provide an appropriate religious dietary meal (Halal beef...) As promised and attempted to coerce and force Plaintiff and others into rescheduling the Eid and into accepting a non-Halal meal." (Complaint at ¶ 4.12).

Plaintiff alleges further that Defendants did not place his name on the approved list for the Eid celebration. As a result, Plaintiff was required to report to work on the day of the celebration, causing him to miss "the obligatory community Salat (prayer) and Khutbah (Sermon). (Complaint at ¶ 4.14).

On March 23, 2006, Plaintiff informed Defendants Olowin and Grimm that he had written several Inmate Requests to Staff in January, February and March 2006 to have his name placed on the callout list for the Jumu'ah (Friday) service, but his name was not placed on the list until April 7, 2006. (Complaint at ¶ 4.38).

In April 2006, Defendants Olowin and Grimm agreed that "the Religious Service would purchase and provide Prayer oil to the Muslims like Defendants do for other Faith groups concerning their religious items." (Complaint at ¶ 4.46). However, the Religious Service stopped purchasing and providing the prayer oil after only two months, and Muslims were not allowed to use the Special Purpose Order (SPO) program to purchase the prayer oil. (Complaint

3

at ¶ 4.47).

### C.      Standards of Review

#### 1.      Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).   The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974).   As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, ___ S.Ct. ___, ___ 2009 WL 1361536 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).  The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations.  Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S.  265, 286 (1986).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of

specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 570.

## 2.       Motion for Summary Judgment

Plaintiff and Defendants have submitted several exhibits for this Court's consideration. As a result, this Court will convert the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. <u>See</u> <u>Burns v. Harris County Bail Bond Bd.</u>, 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); <u>Greer v. Smith</u>, 2003 WL 1090708, *1 (3d Cir. (Pa.) 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." <u>Id</u>.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  <u>See</u> Fed.R.Civ.P. 56(c); <u>Krouse v. American Sterilizer Company</u>, 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving

party's claims.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Country Floors, Inc. v. Partnership Composed of Gepner and Ford</u>, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" <u>Schoch v. First Fidelity Bancorporation</u>, 912 F.2d 654, 657 (3d Cir. 1990) <u>quoting</u> <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  <u>Matsushita Elec. Indus. Company v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986); <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. <u>Celotex</u>, 477 U.S. at 322; <u>Country Floors</u>, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  <u>Anderson v. Liberty Lobby, Inc</u>. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." <u>Firemen's Ins. Company of Newark, N.J. v. DuFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson</u>, 477 U.S. at 247-249.

### 3. *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521(1972).  If

the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. <u>Boag v. MacDougall</u>, 454 U.S. 364 (1982); <u>United States ex rel. Montgomery v. Bierley</u>, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); <u>Freeman v. Department of Corrections</u>, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir.1997). <u>See, e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); <u>Markowitz v. Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## C. Discussion

### 1. Statutory Claims

#### a. RLUIPA

Under the Religious Land Use and Institutionalized Persons Act, "government" is defined as "a State, county, municipality, or other governmental entity created under the authority of a state," and "any branch, department, agency, instrumentality or official, thereof, and "any other person acting under color of State law." 42 U.S.C. 2000c5(4). Accordingly, federal courts have held that RLUIPA "only applies to state and local governments, not a federal prison." <u>Pineda-Morales v. DeRosa</u>, 2005 WL 1607276, at *4 (E.D. N.J. 2005). <u>See</u> <u>also</u> <u>Navajo Nation v. U.S. Forest Service</u>, 535 F.3d 1058 (9th Cir. 2008).

Because Plaintiff is a former federal inmate, his RLUIPA claims should be dismissed.

#### b. RFRA

Under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, the "government

shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).[2] In order to establish a *prima facie* case, a plaintiff must show that his "exercise of religion" was "substantially burdened." 42 U.S.C. 2000bb-1(a).[3] Once a plaintiff establishes a *prima facie* case under the RFRA, the burden shifts to the government to demonstrate that "application of the burden" to the plaintiff "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(1-2).

Here, Plaintiff alleges that Defendants "maliciously and possibly criminally deprived Plaintiff of rights to practice his religion, contrary to BOP regulations, by knowingly and willfully depriving Plaintiff of his dietary regulations, Eid's holy day, Jumu'ah service, and Prayer oil all because of his Muslim/Islamic beliefs." (Complaint at ¶ 10.1). Each of these concerns will be addressed below.

### i.      Deprivation of "Dietary Regulations"

Plaintiff's alleges that Defendants deprived him of his "dietary regulations" by denying Halal meat for the ceremonial meal Plaintiff and other Sunni inmates intended to have in recognition of the Eid-ul-Adha holy day in January 2006. However, the denial of a single ceremonial meal is not a substantial burden on the exercise of one's religion. <u>Pratt v. Corrections Corp. of America</u>, 267 Fed.Appx. 482, 483 (8th Cir. March 7, 2008) (RFRA claim

---

[2]

In <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997), the Supreme Court held that the RFRA is unconstitutional as to state and local governments; however, <u>Flores</u> has not been interpreted to preclude RFRA claims against the federal government. <u>See generally</u>, <u>Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal</u>, 546 U.S. 418 (2006).

[3]

Although the RFRA does not define the term "substantial burden," the Third Circuit has held within the context of the analogous RLUIPA that a "substantial burden exists where 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or ) 2 the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." <u>Norwood v. Strada</u>, 249 Fed. Appx. 269, 2007 WL 2848036, at *1 (3d Cir. 2007) <u>quoting</u> <u>Washington v. Klem</u>, 497 F.3d 272, 280 (3d Cir. 2007).

fails "because he did not show that defendants placed a 'substantial burden' on his ability to practice his religion by failing to provide him with Halal meat."). <u>See</u> <u>also</u> <u>Patel v. U.S. Bureau of Prisons</u>, 515 F.3d 807, 810-12 and n. 8 (8th Cir. 2008) (prison's meal plan regulations did not substantially burden Muslim inmate's free exercise rights where inmate had access to only vegetarian entrees, and some of those entrees he had to pay for himself); <u>Abdul-Malik v. Goord</u>, 1997 WL 83402, at *5-7 (S.D.N.Y. 1997) (holding that the failure to provide Muslim inmates with Halal meat several times per week did not substantially burden their exercise of religion under RFRA).

Thus, Plaintiff cannot establish a *prima facie* RFRA claim regarding Defendants' deprivation of his "dietary regulations," and summary judgment should be granted in favor of Defendants with regard to such claim.


### ii.   Failure to Include Plaintiff on Call-Out List for Eid Celebration

Plaintiff claims that Defendants placed a substantial burden on his religious exercise in violation of RFRA by failing to place his name on the inmate call-out list for the Eid celebration on January 10, 2006. As a result of not being placed on the call-out list for the 2006 Eid celebration, Plaintiff was required to report to work to avoid receiving an incident report. Defendants respond that "the error was promptly remedied by the Chaplains at FCI-McKean as soon as it was discovered," and Plaintiff "was excused from work for the remainder of the morning and day of January 10, 2006." (See Olowin Declaration at ¶ 20). By that time, however, "Plaintiff had missed the obligatory Khutbah (Sermon) and community Salat (Prayer) for the Eid-ul-Adha celebration..." (Document # 26, Plaintiff's Opposition Brief, at p. 6).

Defendants acknowledge that Eid-ul-Adha is one of only two required holy days celebrated by practitioners of Islam each year. (See Olowin Declaration at ¶ 11). Defendants acknowledge further that the Eid-ul-Adha holy day is commemorated by a day of work

proscription and prayer. (Id. at ¶ 12). Thus, it is certainly arguable that the omission of Plaintiff from the call-out list for the Eid celebration forced him "to choose between following the precepts of his religion (work proscription and prayer) and forfeiting benefits otherwise generally available to other inmates (maintaining a job and avoiding misconduct charges), versus abandoning one of the precepts of his religion to receive a benefit." Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007). Thus, Plaintiff has adequately set forth a *prima facie* case under RFRA. Moreover, Defendants have not presented any argument or evidence indicating that the omission of Plaintiff from the call-out list for the Eid celebration was done in furtherance of a compelling governmental interest. Thus, Defendants motion for summary judgment with regard to this claim should be denied.

### iii.    Failure to Include Plaintiff on Call-Out List for Jumu'ah Services

Plaintiff also claims that Defendants placed a substantial burden on his religious exercise in violation of RFRA by failing to place his name on the inmate call-out list for Jumu'ah services for a period of three months, despite his repeated requests that they do so. In particular, Plaintiff claims that he submitted Inmate Requests to Staff in January, February, and March 2006 to have his name placed on the call-out list for Jumu'ah (Friday) service, yet his name was not included on the call-out list until April 7, 2006. (Complaint at ¶¶ 4.33 - 4.38; Exhibit C). Plaintiff states that it is his "sincerely held belief, interpretation, and practice that it's a central requirement to follow the Sunnah or "Traditions/Customs" of Prophet Muhammad,..., and this includes the attaining of Jumu'ah (Friday) Service," which Plaintiff claims "is one of the most important service[s] in the Islamic Faith." (Complaint at ¶ 4.32).

Plaintiff explains that, because he was regularly scheduled for work on Fridays, he was required to be on the call-out list to get released from work to attend the services. (Document # 26, Plaintiff's Opposition Brief, at p. 7). According to Plaintiff, "because [he] was removed from the list [he] had to report to work to get permission to leave work, and by the time [he]

10

received that permission he would miss out on the require[d] community prayer (salat) and sermon (khutbah)." As a result, "Plaintiff had just [enough] time to sign-in and to request to be place[d] back on the call-out list for the following week." (Id.). In support of this claim, Plaintiff has submitted the affidavits of two inmate volunteer workers in FCI-McKean's Religious Services, Mark Evans and Antwon Rogers, who both declare that "Keith Ellis was signed in regularly [for Jumu'ah services] and his name was added to the list of requesting inmates names to be added on the Jumu'ah call-out list for at least the last three months [February - April 2006]." (Complaint, Exhibits C6 at ¶ 4, and C7 at ¶ 4).

The only response offered by Defendants to this claim is that "any error in removing plaintiff's name from the Jumah prayer call-out list has now been remedied, as his name was put back on the list as soon as he submitted a written request." (See Olowin Declaration at ¶ 22). Clearly, there is a factual discrepancy between Plaintiff's allegation that he submitted numerous written requests over a period of three months, which allegedly went unheeded, and Defendants' claim that Plaintiff's name was added to the call-out list "as soon as he submitted a written request." If Plaintiff's allegations prove to be correct, then Plaintiff has adequately set forth a *prima facie* claim that his religious exercise was substantially burdened by Defendants' failure to heed his repeated requests to be placed on the call-out list for Jumu-ah services. Since Defendants have not set forth a compelling government interest to overcome Plaintiff's *prima facie* claim, Defendants' motion for summary judgment in this regard should be denied.

### iv.    Prayer Oils

Plaintiff claims that Defendants "refused to allow Muslims to use the Special Purpose Order (SPO) program [to purchase prayer oil], so that the Prayer oil would not be subjected to a mark up or when commissary is out of the oil." (Complaint at ¶ 4.45). In response, Defendant Olowin declares that "the scented oils were available at all times for the inmates to purchase in the Commissary." (Olowin Declaration at ¶ 23). This fact is acknowledged by Plaintiff. The

mere fact that scented oil was subject to a "mark up" in the commissary did not place a substantial burden on Plaintiff's ability to practice his religion. Accordingly, summary judgment should be granted in favor of Defendants with regard to this claim.

### c.     Administrative Procedures Act

Plaintiff claims that Defendants Gee, Buck and Recktenwald interfered with his rights under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551-702, by rejecting various "Informal Resolutions" he filed at FCI-McKean. As relief for this claim, Plaintiff seeks "nominal, compensatory, and punitive damages." (Complaint at ¶ 11.1). However, a claim under the APA is not actionable where the plaintiff seeks only monetary damages. See 5 U.S.C. § 702 (allowing judicial review under the APA for a person seeking "relief other than money damages"); Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261-62 (1999). As a result, Plaintiff's APA claim should be dismissed.

### d.     Federal Tort Claims Act.

### i.     Individual Defendants

The Federal Tort Claims Act ("FTCA") grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment. See 28 U.S.C. § 2675(a). The FTCA sets forth the government's consent to be sued for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." Howell v. United States, 932 F.2d 915, 917 (11th Cir.1991) (citations omitted). The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated. 28 U.S.C. § 2674.

All actions brought pursuant to the FTCA must be brought against the United States of America and not in the name of the allegedly negligent agency, entity or employee. 28 U.S.C. §§ 2671-2680; 28 U.S.C. § 1346(b). The only proper party in an FTCA action is the United

States of America.  To the extent that Plaintiff alleges an FTCA claim against the individual Defendants (see Complaint at ¶ 13.1), such claim should be dismissed.


### ii.      United States

The FTCA does not create a substantive cause of action against the United States, but provides a mechanism by which a plaintiff may bring a state law tort action against the federal government in federal court.  Hence, in a FTCA action, the district court applies the law of the state in which the act occurred.  <u>See</u> 28 U.S.C. § 1346(b); <u>Castillo v. U.S.</u>, 2002 WL 1752235, at *3 (7th Cir.2002).  The United States may only be held liable under the FTCA if a private person would be liable under the tort law of the state where the conduct at issue occurred.  <u>See</u> 28 U.S.C. § 1346(b)(1); <u>Williams</u>, 242 F.3d at 175.  The FTCA's limited waiver of sovereign immunity extends no further than the limits of private tort liability under state law, and a claim based on federal constitutional law may not be involved under the FTCA.  <u>Washington v. Drug Enforcement Administrative</u>, 183 F.3d 868, 873 (8th Cir. 1999).

In his Complaint, Plaintiff specifically alleges that the United States should be liable under the FTCA for "the intentional gross negligence, unlawful and malicious deprivation of Plaintiffs' religious exercise, for the sole purpose of discriminating against Plaintiff, to impose a substantial burden on Plaintiff's religious exercise, and cause him harm...."  (Complaint at ¶ 5.1).  To the extent that Plaintiff is alleging an intentional tort, there is no FTCA claim.  28 U.S.C. § 2680(h).   A different result is reached to the extent Plaintiff is alleging simple negligence.   Mindful that Plaintiff is proceeding *pro se*, such a negligence claim for omitting his name on the call-out sheet for Eid services may be understood by a fair reading of the totality of  his Complaint.  Because Defendants do not move to dismiss any simple negligence claims under the FTCA, Plaintiff's claim in this regard should proceed.  All other claims under the FTCA should be dismissed.

## 2. *Bivens* Claims

### a. *Respondeat Superior*

Defendants Sherman and Robare argue that they should be dismissed from this case because Plaintiff has failed to allege their personal involvement and therefore has failed to state a claim against them. The Court disagrees.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

Here, Plaintiff raises the following specific allegations against Defendants Sherman and Robare:

> Plaintiff and other leaders from the Sunni Muslim community was [sic] planning and discussion [sic] the 2006 Eid-ul-Adha celebration with Defendants, James F. Sherman, S.L. Robare,... and unknown other staff members since May 2005....  The reason for this intense and long planning and discussion was to prevent problems from occurring like there did [sic] for the 2005 Eid-ul-Adha.  During the planning phase Defendants ordered the Plaintiff and others to submit an Inmate Request to Staff to the Religious Service concerning the Eid-ul-Adha for 2006. (Complaint at ¶ 4.3).

>               *              *              *

> ... Plaintiff then filed a Request for Administrative Remedy (BP-9) ID #400615, to the former Warden Sherman hoping that those issues concerning the 2006 Eid [regarding the provision of Halal meat for the ceremonial meal] will [sic] be resolved in time before January 10, 2006. (Complaint at ¶ 4.11).

>               *              *              *

> Defendants James F. Sherman, Edward Roberts, Jan C. Olowin, Brian Grimm, Gerald Desio and unknown others acted in concert with each other to arbitrary [sic] and capriciously deny and deprive Plaintiff of his religious feast.... (Complaint at ¶ 4.21).

Thus, Plaintiff essentially claims that Defendants Sherman and Robare participated and/or had input in the discussions leading up to the decision to deny Halal meat for the 2006 Eid celebration.  These allegations are sufficient to, at least, call into question the personal involvement of both Defendants Sherman and Robare in the central decision-making process at issue in this case.  Accordingly, Defendants motion to dismiss Defendants Sherman and Robare for this case, based on Plaintiff's failure to allege their personal involvement, should be denied.

### b.     First Amendment - Free Exercise of Religion Claim

Next, Defendants argue that Plaintiff's First Amendment free exercise of religion claim should be dismissed because the denial of Halal meat passes constitutional muster under the reasonableness test of Turner v. Safley, 482 U.S. 78 (1987).[4]

---

[4]

To the extent that Plaintiffs allege any *Bivens* claims against the United States, such claims should be dismissed based upon sovereign immunity.  See F.D.I.C. v. Meyer, 510 U.S. 471, 477-78 (1994); Johnstone v. United States,

Despite their incarceration, prisoners have a First Amendment right to practice their religion. Bell v. Wolfish, 441 U.S. 520, 544 (1979). However, these constitutional rights are limited by the fact of incarceration as well as valid penological objectives. See O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security"); Price v. Johnston, 334 U.S. 266, 285 (1948) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.").

The evaluation of penological objectives in this context is "committed to the considered judgment of prison administrators," and to ensure appropriate deference to those judgments, courts review challenged prison regulations under a "reasonableness" test. O'Lone, 82 U.S. at 349 quoting Bell, 441 U.S. at 562; Turner, 482 U.S. at 87-91. Courts generally accord great deference to prison officials' adoption and execution of policies, regulations, and practices relating to the preservation of internal order, discipline, and security within the prison environment. Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989); Turner, 482 U.S. at 85.

The Turner reasonableness analysis[5] focuses on four factors:

1.  whether there is a legitimate rational connection between the prison regulation and the governmental interest;

2.  whether the prisoners have alternative means of exercising the constitutional right at hand;

---

980 F.Supp. 148, 151 (E.D. Pa. 1997) (explaining that *Bivens* actions "may only be maintained against federal officers; sovereign immunity bars such actions against the United States or agencies thereof.").

[5]

The *Turner* analysis "... assumes as a predicate that the plaintiff inmate has demonstrated that a constitutionally protected interest is at stake." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). "The mere assertion of a religious belief [by a prisoner] does not automatically trigger First Amendment protections ... [O]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." Id. See also Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981) cert. denied, 456 U.S. 908 (1982) ("A court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature..."). Because Defendants do not argue that Plaintiff Ellis' beliefs are not sincerely held and/or religious in nature, this Court must determine whether the challenged action is reasonable under *Turner*.

3.    the impact that accommodation of the constitutional right would have on other prisoners, guards, and prison resources in general; and

4.    the availability of alternatives to the regulation.

482 U.S. at 89-90.  "Although the factors are intended to serve as guides to a single reasonableness standard, 'the first factor looms especially large' because it 'tends to encompass the remaining factors, and some of its criteria are apparently necessary conditions.'" Waterman v. Farmer, 183 F.3d 208, 213-14 (3d Cir. 1999) quoting Amatel v. Reno, 156 F.3d 192, 196 (D.C. Cir. 1998).


### i.    The First Turner Factor

The first Turner factor considers the relationship between the policy and the penological interest.  "A prison regulation fails this prong if it promotes an interest that is illegitimate or not neutral, or ... bears no valid, rational connection to the asserted interest." Fraise v. Terhune, 283 F.3d 506, 516 (3d Cir. 2002).  Under this prong, the court must "accord great deference to the judgments of prison officials 'charged with the formidable task of running a prison.'" Sutton v. Rasheed, 2003 WL 1354099, at * 11 (3d Cir. 2003) quoting O'Lone, 482 U.S. at 353.  This factor requires a two-fold analysis: "we must determine whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective." Id. quoting Thornburgh, 490 U.S. at 414-15.   "The first factor is 'foremost in the sense that a rational connection is a threshold requirement - if the connection is arbitrary or irrational, the regulation fails, irrespective of whether the other factors tilt in its favor.  But, ... we do not view it as subsuming the rest of the inquiry." Id. quoting Wolf v. Reno, 297 F.3d 305, 310 (3d Cir. 2002).

Here, Defendants claim budgetary concerns as the penological interest.  In support of

their motion for summary judgment, Defendants have provided evidence[6] that the budget for the

Religious Services Department at FCI-McKean was cut by 15% for the fiscal year 2005, "and it

essentially remained the same ... for fiscal year 2006." (Olowin Declaration at ¶ 7). As a result,

Defendants Olowin and Grimm decided not to serve traditional or cultural food items for

ceremonial meals for any religious group during the 2006 fiscal year, as a way to conserve

financial resources. (Id. at ¶ 8). Generally, budgetary constraints are a valid penological interest

and restricting religious and ceremonial meals is rationally related to that interest. Williams v.

Morton, 343 F.3d 212, 217-18 (3d Cir. 2003). See also Fraise, 283 F.3d at 517-18; DeHart, 227

F.3d at 53.

Nonetheless, in his sworn Declaration in opposition to Defendants' motion [Document

# 27], Plaintiff declares that:

> [t]he funding for the Passover meals comes out of the Food Service
> budget, therefore the purchase orders that was [sic] submitted to the
> courts by Defendant Olowin would not have showed this cost. See
> MCK 5360.09, Religious Beliefs and Practices of Committed Offenders,
> section 7b, page 6, which states in part:
>
> > "... The food will be made available through food service's
> > budget, not religious services"
>
> The religious service do [sic] not have to purchase those meals, and that
> is why those meals do not show up in the purchase orders that was [sic]
> submitted to the courts. Those orders that were submitted to the court
> were just a tactic to deceive the courts. In fact, the Religious Diet
> Program comes out of the food service's budget and not the religious
> service's budget. See P.S. 4700.04, Food Service Manual, section 11,
> page 4.

(Document # 27, Ellis Declaration at pp. 15-16).

The foregoing portion of Plaintiff's Declaration creates a genuine issue of material fact

as to whether the Halal meat that was requested for the 2006 Eid celebration would have been

purchased from the food service budget, as Plaintiff contends, or out of the religious service

budget, as Defendants contend. If the former, then Defendants' argument that the budget for the

---

[6]

The Turner analysis is extremely fact-intensive. See Wolf v. Reno, 297 F.3d at 308 (rejecting a "common sense
approach" to the Turner reasonableness standard).

Religious Services Department was slashed would not constitute a legitimate penological interest supporting their denial of the Halal meat. Given this factual discrepancy, the Court cannot determine whether or not the first Turner factor has been satisfied on summary judgment. Because the first Turner factor "tends to encompass the remaining factors, and some of its criteria are apparently necessary conditions," Waterman, 183 F.3d at 213-14, there is no need to turn to the remaining factors of the Turner analysis. Defendants' motion for summary judgment in this regard should be denied.

### c. Fifth Amendment - Equal Protection Claim

Next, Plaintiff claims that the denial of Halal meat for the ceremonial feast violated his equal protection rights. The Equal Protection Clause provides that no state shall "deny to any person ... the equal protection of its laws." U.S. Const. Amend. XIV, §1. All persons "similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)

As a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class." Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996). Here, Plaintiff's equal protection claim is based solely on his treatment as a Sunni Muslim as compared to other religiously active inmates at the prison. Specifically, Plaintiff alleges that Defendants provided kosher items to Jewish inmates for Passover while denying his requests for Halal meat, thereby violating his equal protection rights. (Complaint at ¶¶ 4.20 and 4.21). Plaintiff also alleges that Defendants "purchased and provided Kosher items and meats for the Jewish inmates for their Passover and their other ceremonial occasions" and Defendants "also purchased and provided special food and items for other faith groups and secular holidays, such as New Years, Easter Sunday, the Fourth of July, and Labor Day, Thanksgiving, and Christmas." Id.

Defendants have provided evidence that prison staff "did not purchase any

traditional/ritual foods for ceremonial meals for any religious group during the 2006 fiscal year." (Olowin Declaration at ¶¶ 8-10). Defendants also claim that "[a]lthough the purchase orders reflect that some food items were purchased, none were traditional or cultural food items that may be used at a ceremonial meal, such as Halal lamb for the Eid-ul-Adha." Id.

In response, Plaintiff provides the following evidence by sworn affidavit: 1) that eating Halal meat is "a central requirement" during Eid-ul-Adha as it "commemorate[s] the sacrifice made by Abraham and his son," and 2) that Kosher meat meals and matzah were provided to Jewish inmates during Passover. (Document # 27, Ellis Declaration at pp.15-17 and Exhibits 1, 1a, 1b, and 1c). In other words, Plaintiff claims that eating Halal meat on this day is not simply a celebration dinner, but rather, is similar to the required foods of Passover for the Jewish inmates. Plaintiff even claims that special meals that were only celebratory in nature in fact were provided on Christmas and Easter to Christian inmates. Id.[7]

Therefore, at the very least, a genuine issue of material fact exists as to whether these similarly situated inmates were treated differently with respect to a religious diet. This precludes summary judgment, so that the Turner analysis in the next step of the review need not be reached here. See Dehart v. Horn, 227 F.3d 47, 61 (3d Cir. 2000). Plaintiff's equal protection claim should survive Defendants' motion for summary judgment..

## d.    Fifth Amendment - Due Process Claim

Plaintiff avers, generally, that his due process rights under the Fifth Amendment were violated by Defendants. Plaintiff's allegation in this regard is barely more than a mere mention and Plaintiff does not articulate whether the due process challenge is procedural or substantive

---

[7]
There is also an issue of whether Halal beef was available on the Religious Diet Program for the Eid meal in January 2006. At one point in Defendants' argument they agree that Halal beef was not offered on that day, and at another point in the supporting affidavits, it is claimed that the Religious Diet Program provided the beef that Plaintiff sought to all persons on the program, Muslim or not, that day. (Olowin Declaration at ¶¶ 8-10, 15). For his part, Plaintiff testifies in his Declaration that he participated in the Religious Diet Program for five years, including January 2006, and that he was not served Halal beef on the day at issue. (Ellis Declaration at p. 16).

in nature.

The Due Process Clause, guaranteed through the Fourteenth Amendment of the United States Constitution, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amends. V; XIV. The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; while the "substantive" aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. Daniels v. Williams, 474 U.S. 327, 329-33 (1986).

### i.        Substantive due process

The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them. Foucha v. Louisiana, 504 U.S. 71, 80 (1990). See also Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause. County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (clarifying that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."). A substantive due process claim based upon alleged arbitrary and capricious action is not easily mounted, because the relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but rather, something more egregious, which the

21

Third Circuit has termed "conscience shocking." <u>Hunterson v. DiSabato</u>, 308 F.3d 236, 246-47 (3d Cir. 2002). This Circuit has made clear that "only the most egregious conduct will be considered arbitrary in the constitutional sense." <u>Id.</u> at 247-48.

Nothing in the complaint rises to the level of conscience shocking behavior that would support a substantive due process claim. Accordingly, to the extent that Plaintiff is attempting to state a claim of substantive due process, summary judgment should be entered in favor of Defendants with regard to such claim.

## ii.     Procedural due process

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. <u>Daniels</u>, 474 U.S. at 339. If a person does not have a constitutionally-protected interest, he is not entitled to the procedural protections afforded by the Due Process Clause.[8]

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983).[9] Plaintiff

---

[8] If a liberty interest is found, the next step in the due process inquiry is to determine what process is due. "Due process ... is not a technical conception with a fixed content unrelated to time, place and circumstances." <u>Gilbert v. Homar</u>, 520 U.S. 924, 930 (1997). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972). At a minimum, due process requires notice and the opportunity to be heard. <u>Paul v. Davis</u>, 424 U.S. 693, 724 (1976) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

[9] See <u>Washington v. Glucksberg</u>, 521 U.S. 702 , 720 (1997) ("The [Due Process] Clause [...] provides heightened protection against government interference with certain fundamental rights and liberty interests. [In] a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the liberty specially protected by the Due Process Clause includes the rights to marry, <u>Loving v. Virginia</u>, 388 U.S. 1 (1967); to have children, <u>Skinner v. Oklahoma ex rel. Williamson</u>, 316 U.S. 535 (1942); to direct the education and upbringing of

does not have either a property or liberty interest in receiving a ceremonial feast. See Russell v. Wilkinson, 79 Fed.Appx. 175 (6th Cir. 2003) (holding that the denial of kosher meals did not involve a property or liberty interest for purposes of due process analysis). Plaintiff cannot support a claim based upon a violation of his procedural due process rights, and summary judgment should be entered in favor of Defendants with regard to such claim.

### e.        Retaliation

Retaliation for the exercise of one's constitutional rights is a separate matter, requiring a distinct legal analysis. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials[10]; and

3) his constitutionally protected conduct was a substantial or motivating factor in

_____

one's children, Meyer v. Nebraska, 262 U.S. 390 (1923); Pierce v. Society of Sisters, 268 U.S. 510 (1925); to marital privacy, Griswold v. Connecticut, 381 U.S. 479 (1965); to use contraception, ibid.; Eisenstadt v. Baird, 405 U.S. 438 (1972); to bodily integrity, Rochin v. California, 342 U.S. 165 (1952), and to abortion, [Planned Parenthood of Southeastern Pennsylvania v.] Casey, [505 U.S. 833 (1992)].").

[10]

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

the decisions to discipline him.[11]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Here, Plaintiff claims that Defendants retaliated against him for filing requests to staff, administrative grievances and a lawsuit regarding the 2005 Eid-ul-Adha celebration by: (i) removing and/or omitting his name from the call-out list for the 2006 Eid celebration; (ii) failing and/or refusing to place his name on the call-out list for Jumu'ah services for a period of three months; (iii) refusing to process his grievances in accordance with policy; and (iv) not allowing him to purchase prayer oil through the SPO program. (Complaint at ¶¶ 4.1, 12.1).

### i. Constitutionally Protected Activity

Plaintiff has met the first prong of a retaliation claim, as filing lawsuits, grievances,

---

[11]

In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

requests to staff, and complaints are clearly protected forms of free speech under the First Amendment.

### ii. Adverse Action

To satisfy the second prong, Plaintiff must show that the alleged retaliatory acts rose to the level of adverse action. This means that Plaintiff's allegations must be sufficient to demonstrate that the adverse consequences he allegedly suffered would deter a person of ordinary firmness from engaging in constitutionally protected activity. Defendants contend that Plaintiff has failed to satisfy this prong because he cannot show that any of the alleged retaliatory conduct rises to the level of "adverse action."

In particular, Defendants argue that the alleged omission of Plaintiff's name from call-outs for the 2006 Eid celebration and Jumu'ah prayer services "would not be sufficient to deter a person of ordinary firmness from exercising his constitutional rights, particularly because the omissions were remedied as soon as they were brought to the attention of the Chaplains." (Document # 21 at p. 17). This argument glosses over the fact that, on a holy day Muslims are called to commemorate by work proscription and prayer, Plaintiff was required to report to work and was thereby forced to miss the sermon and community prayer, all due to Defendants' alleged omission of his name from the Eid celebration call-out list. Defendants also gloss over Plaintiff's claim that he had submitted written requests to be called-out for Jumu'ah services over a period of three months, yet was not placed on the list, thus causing him to repeatedly miss "one of the most important service[s] in the Islamic Faith." (Complaint at ¶ 4.32).[12] The Court finds that these alleged intrusions upon Plaintiff's religious practices, alone, would be sufficient to deter a person of ordinary firmness from engaging in constitutionally-protected activity.

---

[12]

Defendants simply state that "Plaintiff was put back on the call-out for Jumah prayer as soon as he submitted a written request," without addressing Plaintiff's claim that he had submitted multiple requests over a three month period. (Document # 21 at p. 17).

Accordingly, Plaintiff has sufficiently established "adverse action" under the second prong of a retaliation claim.

### iv. Causal Connection

To satisfy the third prong of his retaliation claim, Plaintiff must allege a causal connection between his constitutionally protected activity of filing complaints and grievances and the adverse actions he allegedly suffered at the hands of the Defendants. According to the Complaint, Plaintiff filed a number of Inmate Requests to Staff, Informal Resolutions, and grievances within a few months before and after the January 10, 2006, Eid-ul-Adha celebration. (Complaint at ¶¶ 4.4- 4.11, 4.15 - 4.17). Thus, Plaintiff has alleged, at least, a temporal proximity between the administrative remedies he filed and Defendants' alleged adverse actions to suggest a causal link sufficient to satisfy the third prong of his retaliation claim. See Allah v. Al-Hafeez, 208 F.Supp.2d at 535.

Based on the foregoing, Plaintiff has sufficiently alleged a *prima facie* case of retaliation. Defendants have failed to set forth any legitimate penological interest to overcome Plaintiff's *prima facie* case at this juncture. As a result, Defendants' motion for summary judgment regarding Plaintiff's retaliation claim should be denied.

### f. Qualified Immunity

Alternatively, Defendants contend that they are entitled to qualified immunity because "it was objectively reasonable for the Individual Defendants to believe that they did not violate any clearly established statutory rights" by making the decisions at issue in this case. (Document # 21 at p. 22).

The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 530 U.S. 730, 739 (2002). This Court notes that the two-step inquiry set forth in Saucier v. Katz, 533 U.S.194 (2001) has recently been relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. ___, 129 S.Ct. 808 (Jan. 21, 2009). See also Bumgarner v. Hart, 2009 WL 567227 (3d Cir. March 6, 2009).

The Supreme Court has repeatedly emphasized the importance of resolving the immunity questions at the earliest possible stages of a case. Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987); Harlow, 457 U.S. at 818. However, "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." Curley, 298 F.3d at 277.

Here, this Court has determined that Plaintiff has sufficiently alleged a Fifth Amendment equal protection violation, and a *prima facie* case of retaliation for the exercise of his First Amendment rights.[13] The next step in the analysis is to determine whether the constitutional rights were clearly established at the time of the violation. Hope, 530 U.S. at 739. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). The Supreme Court has observed:

> for a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the length of pre-existing law the unlawfulness must be apparent.

---

13

The Court has also found that the factual record in this case is insufficient to determine whether Defendants violated Plaintiff's First Amendment right to free exercise of religion at this time. Accordingly, Defendants' motion to dismiss this claim on the basis of qualified immunity is premature and should be denied.

<u>Hope</u>, 536 U.S. at 739.

In this case, the legal precedent regarding Plaintiff's right to equal protection under the Fifth Amendment, and his right to be free from retaliation for exercising his First Amendment rights, were clearly established at the time of the Defendants' alleged actions. <u>See</u> <u>City of Cleburne</u>, 473 U.S. at 439 (Equal Protection Clause provides that all persons "similarly situated should be treated alike"); <u>Keevan</u>, 100 F.3d at 648 (as a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class"); <u>White</u>, 897 F.2d at 111-12 ("retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983;" <u>Mitchell</u>, 318 F.3d at 530 ("government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right"). Thus, a reasonable government officer would be on notice that the conduct alleged here was unlawful.

Accordingly, Defendants are not entitled to qualified immunity and the motion to dismiss or for summary judgment should be denied in this regard.


**III.     CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [Document # 20] be granted in part and denied in part, as follows:

1.     Defendants' motion to dismiss Defendants Sherman and Robare based on Plaintiff's failure to allege their personal involvement should be denied;

2.     Plaintiff's RLUIPA and APA claims should be dismissed for failure to state claims upon which relief may be granted;

3.     Plaintiff's FTCA claims against the individual Defendants should be dismissed for failure to state a claim upon which relief may be granted;

4.     Defendants should be granted summary judgment with regard to Plaintiff's FTCA claim against the United States to the extent Plaintiff

attempts to raise an intentional tort, but should be denied summary judgment on such claim to the extent Plaintiff raises simple negligence;

5.      Defendants should be granted summary judgment on Plaintiff's RFRA claims regarding the denial of Halal meat for the 2006 Eid celebration and the refusal to allow prayer oils to be purchased through the SPO program;

6.      Defendants should be denied summary judgment on Plaintiff's RFRA claims regarding the omission of his name from the call-out list for the 2006 Eid celebration and the failure and/or refusal to place his name on the call-out list for the Jumu'ah prayer service for a period of three months;

7.      Defendants should be denied summary judgment with regard to Plaintiff's First Amendment free exercise of religion claim

8.      Defendants should be denied summary judgment with regard to Plaintiff's Fifth Amendment equal protection claim;

9.      Defendants should be granted summary judgment with regard to Plaintiff's Fifth Amendment due process claims; and

10.     Defendants should be denied summary judgment with regard to Plaintiff's retaliation claim.

11.     Defendants' motion to dismiss Plaintiff's *Bivens* claims based on qualified immunity should be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Failure to timely file objections may constitute a waiver of appellate rights. See <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: June 2, 2009

cc:     The Honorable Sean J. McLaughlin
       United States District Judge