**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEITH ELLIS,** | ) | |
| **Plaintiff** | ) | **C.A. No. 08-160 Erie** |
| | ) | |
| **v.** | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| **UNITED STATES OF AMERICA, et al.,** | ) | |
| **Defendants.** | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 70] be granted in part and denied in part.

### II.    REPORT

#### A.    Relevant Procedural History

On May 27, 2008, Plaintiff Keith Ellis, a Sunni Muslim and former inmate incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean"), filed this *pro se* civil rights action. Named as Defendants are:  the United States of America ("United States"); Edward Roberts, the Federal Bureau of Prison's Northeast Regional Religious Service Administrator ("Roberts"); James Sherman, former Warden of FCI McKean ("Sherman"); S.L. Nolan (formerly known as "S.L.Robare"), Associate Warden at FCI McKean ("Nolan"); Jan C. Olowin, former Supervisory Chaplain at FCI McKean ("Olowin"); Brian Grimm, Chaplain at FCI McKean ("Grimm"); Gerald Desio, Food Service Supervisor at FCI-McKean ("Desio"); Michael Baldensperger, Trust Fund Supervisor at FCI McKean ("Baldensperger"); Tina Murphy Gee, former Unit Manager at FCI McKean ("Gee"); Gary Buck, Correctional Counselor at FCI McKean ("Buck"); and Monica Recktenwald, Executive Assistant/Camp Administrator at FCI-McKean ("Recktenwald").

1

In his Complaint, Plaintiff has asserted statutory claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5; the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4; and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551-702; as well as *Bivens* claims citing violations of the First Amendment's Establishment Clause and right to free exercise of religion, violations of his Fifth Amendment rights to Due Process and Equal Protection, and retaliation. In particular, Plaintiff has alleged that Defendants denied Halal meat for a ceremonial Muslim feast on January 10, 2006, and omitted his name from the call-out lists for the 2006 Eid-ul-Adha holy day celebration and Jumu'ah prayer services. (ECF No. 1, Complaint, at ¶¶ 4.2-4.14, 4.32-4.38). In addition, Plaintiff claims that Defendants interfered with his access to the administrative remedy process (Id. at ¶¶ 4.26-4.31). As relief for his claims, Plaintiff seeks nominal, compensatory and punitive damages.

On October 1, 2008, Defendants filed a motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 20]. By Report and Recommendation ("R&R") dated June 3, 2009, this Court recommended that Defendants' motion be granted in part and denied in part, as follows:

1. Defendants' motion to dismiss Defendants Sherman and Nolan based on Plaintiff's failure to allege their personal involvement should be denied;

2. Plaintiff's RLUIPA and APA claims should be dismissed for failure to state claims upon which relief may be granted;

3. Plaintiff's FTCA claims against the individual Defendants should be dismissed for failure to state a claim upon which relief may be granted;

4. Defendants should be granted summary judgment with regard to Plaintiff's FTCA claim against the United States to the extent Plaintiff attempts to raise an intentional tort, but should be denied summary judgment on such claim to the extent Plaintiff raises simple negligence;

5. Defendants should be granted summary judgment on Plaintiff's RFRA claims regarding the denial of Halal meat for the 2006 Eid

2

celebration and the refusal to allow prayer oils to be purchased through the SPO program;

6.  Defendants should be denied summary judgment on Plaintiff's RFRA claims regarding the omission of his name from the call-out list for the 2006 Eid celebration and the failure and/or refusal to place his name on the call-out list for the Jumu'ah prayer service for a period of three months, but it should be granted as to the dietary regulations claim under RFRA;

7.  Defendants should be denied summary judgment with regard to Plaintiff's First Amendment free exercise of religion claim

8.  Defendants should be denied summary judgment with regard to Plaintiff's Fifth Amendment equal protection claim;

9.  Defendants should be granted summary judgment with regard to Plaintiff's Fifth Amendment due process claims; and

10. Defendants should be denied summary judgment with regard to Plaintiff's retaliation claim; and

11. Defendants' motion to dismiss Plaintiff's *Bivens* claims based on qualified immunity should be denied.

(ECF No. 29, Report and Recommendation, at pp. 28-29).

Both parties filed objections to this Court's R&R. By Memorandum Order dated September 8, 2009, District Judge Sean J. McLaughlin adopted the R&R in part and rejected it in part. [ECF No. 41]. In particular, Judge McLaughlin granted Defendants' motion with regard to the same claims recommended for dismissal in the R&R, and he also dismissed Plaintiff's First Amendment free exercise of religion claim and Plaintiff's FTCA claims against the United States, in their entirety.[1] Nevertheless, Judge McLaughlin denied the remainder of Defendants' motion in accordance with the R&R's recommendations, such that the following claims now remain: (i) a Fifth Amendment equal protection claim related to the denial of Halal meat for the 2006 Eid-ul-Adha; (ii) RFRA claims related to the alleged omission of Plaintiff's name from the

---

[1]

As a result, the United States was dismissed as a Defendant in this matter.

call-out lists for the 2006 Eid-ul-Adha, and the Jumu'ah prayer service for a period of three months; and (iii) a retaliation claim arising from the alleged omission of his name from the aforementioned call-out lists, and the alleged refusal to process his grievances and inmate requests in accordance with policy.

The parties have now completed discovery, and Defendants have filed a motion for summary judgment [ECF No. 71], arguing that judgment should be entered in their favor, as a matter of law, because: (i) they are entitled to qualified immunity as to Plaintiff's equal protection claim; (ii) Plaintiff has failed to adequately support an equal protection claim by showing that the denial of Halal meat was motivated by a discriminatory purpose or that he was treated differently from other similarly-situated inmates; (iii) Plaintiff's RFRA claim must fail because the statute does not waive sovereign immunity as to suits for monetary damages and/or the alleged omission of Plaintiff's name from the call-out lists for the Eid celebration and Jumu'ah prayer services did not substantially burden his exercise of religion; and (iv) Plaintiff's retaliation claim fails because he cannot show that he suffered an "adverse action" or that any such action was causally connected to his constitutionally protected activity. Plaintiff has since filed a memorandum in opposition to Defendants' motion. [ECF No. 76]. This matter is now ripe for consideration.

**B.**     **Relevant Factual History**

On or about October 9, 2005, Plaintiff and other Sunni Muslim inmates at FCI McKean ("Sunni inmates") submitted an Inmate Request to Defendant Olowin requesting that Halal lamb be served at their Eid-ul-Adha ("Eid") celebration in January 2006. (ECF No. 1, Complaint, at Exhibit A).[2] By Memorandum dated November 4, 2005, Defendant Olowin advised Jomo

_____

    2

Eid-ul-Adha is a required holy day for practitioners of Islam that commemorates when the prophet Abraham (Ibrahim) demonstrated obedience to God through his willingness to offer up his son as a sacrifice. (ECF No. 73, Defendants' Concise Statement of Material Facts, at ¶ 15; ECF No. 77, Plaintiff's Response to Concise Statement of

Williams, the spokesman for the inmate Muslim community, that Halal lamb would not be provided, and that "all ceremonial meals must be prepared from food items available on the FCI McKean institutional list." (See ECF No. 71-11). Thereafter, Plaintiff alleges that a second request was submitted to Defendant Olowin, dated November 10, 2005, requesting to have Halal beef, rather than Halal lamb, served at the Eid celebration. (ECF No. 1, Complaint, at ¶ 4.5 and Exhibit A1)

On November 18, 2005, Plaintiff alleges that he and other Sunni inmates met with Defendants Olowin and Grimm to discuss the January 2006 Eid celebration, at which time Defendant Olowin allegedly informed Plaintiff that Halal beef was approved for the ceremonial meal. (Id. at ¶ 4.9). However, on January 10, 2006, the day the Eid celebration was scheduled to be held, Plaintiff alleges that "the Defendants refused to provide an appropriate religious dietary meal (Halal beef...) as promised and attempted to coerce and force Plaintiff and others into rescheduling the Eid and into accepting a non-Halal meal." (Id. at ¶ 4.12).

Plaintiff alleges further that Defendants did not place his name on the approved list for the Eid celebration. As a result, Plaintiff was required to report to work on the day of the celebration, causing him to miss "the obligatory community Salat (prayer) and Khutbah (Sermon). (Id. at ¶ 4.14).

Finally, Plaintiff alleges that he wrote several Inmate Requests to Staff in January, February and March 2006, to have his name placed on the callout list for the Jumu'ah prayer

---

Material Facts, at ¶ 15). The ceremonial meal may occur on the day of the Eid, or on any of the three "days of drying meat" following that day. (Id. at ¶ 16).

service;[3] however, his name was not placed on the list until April 7, 2006. (Id. at ¶ 4.38).

### C. Standards of Review

#### 1. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the

---

[3]

Jumu'ah is a mid-day congregational prayer service on Fridays that is required for practitioners of Islam. (ECF Nos. 73 and 77 at ¶ 17).

pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

## 2.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552,

555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); <u>Freeman v. Department of Corrections</u>, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir.1997). <u>See, e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); <u>Markowitz v. Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion

#### 1. *Respondeat Superior*

Defendants Sherman, Nolan, Desio and Baldensperger argue that summary judgment should be entered in their favor because Plaintiff has failed to demonstrate that they were personally involved in any of the alleged constitutional violations.[4] The Court agrees.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." <u>Id.</u> quoting <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1120 (3d Cir. 1990), <u>cert</u>. <u>denied</u>, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. <u>Rode v. Dellarciprete</u>, 845 F.2d 1958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>see</u> <u>also</u> <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) (superiors of line

---

[4]

Defendants actually raise this argument as part of their qualified immunity analysis; however, the Court finds it more appropriate to consider the argument separately

officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

### a.    **Defendants Sherman and Nolan**

In his complaint, Plaintiff alleges that:

> Plaintiff and other leaders from the Sunni Muslim community was [sic] planning and discussion [sic] the 2006 Eid-ul-Adha celebration with Defendants, James F. Sherman, S.L. [Nolan],... and unknown other staff members since May 2005.... The reason for this intense and long planning and discussion was to prevent problems from occurring like there did [sic] for the 2005 Eid-ul-Adha. During the planning phase Defendants ordered the Plaintiff and others to submit an Inmate Request to Staff to the Religious Service concerning the Eid-ul-Adha for 2006. (Complaint at ¶ 4.3).

> \*                    \*                    \*

> ... Plaintiff then filed a Request for Administrative Remedy (BP-9) ID #400615, to the former Warden Sherman hoping that those issues concerning the 2006 Eid [regarding the provision of Halal meat for the ceremonial meal] will [sic] be resolved in time before January 10, 2006. (Complaint at ¶ 4.11).

> \*                    \*                    \*

> Defendants James F. Sherman, Edward Roberts, Jan C. Olowin, Brian Grimm, Gerald Desio and unknown others acted in concert with each other to arbitrary [sic] and capriciously deny and deprive Plaintiff of his religious feast.... (Complaint at ¶ 4.21).

Upon consideration of Defendants' previous motion to dismiss, this Court found the foregoing allegations to be "sufficient to, at least, call into question the personal involvement of both Defendants Sherman and [Nolan] in the central decision-making process at issue in this case." (ECF No. 29, Report and Recommendation, at p. 15). However, Plaintiff has since failed to support his allegations with sufficient evidence from which a reasonable fact finder could conclude that either Defendant actively participated in the alleged violation of Plaintiff's constitutional rights.

In particular, with regard to Defendant Sherman's alleged participation, the only evidence offered by Plaintiff is his own deposition testimony that: (i) he approached Defendant Sherman twice about getting Halal meat for the 2006 Eid celebration, and once about being placed back on the call out list for Jumu'ah prayer service, and on each occasion was told by Sherman that "he would look into it" ((ECF No. 71-18 at pp. 18, 29 (internal pp. 127-128, 177-78)); and (ii) he submitted administrative remedy requests/appeals to Defendant Sherman regarding these issues. (Id. at p. 18 (internal p. 128)).[5] Such evidence is insufficient to establish active participation in the denial of Plaintiff's constitutional rights.

Plaintiff has submitted even less concerning Defendant Nolan's alleged participation. In fact, the only evidence offered in this regard is Plaintiff's deposition testimony that, on one occasion, he and some other Sunni Muslim inmates approached Defendant Nolan to discuss the problems they were having with obtaining Halal meat for the 2006 Eid celebration. (ECF No. 71-18 at p. 19 (internal pp. 129-132)). According to Plaintiff, Defendant Nolan "was really supportive" and they "thought she was going to assist [them] in the matter," but "she never got back to [them]." (Id.). This is clearly insufficient to establish Defendant Nolan's personal involvement in any alleged constitutional violation.

---

[5]

Plaintiff has also submitted a Declaration, adding that Defendant Sherman instructed him to submit an Inmate Request to Staff to the Religious Service regarding his concerns. (ECF No. 78-18 at ¶¶ 1.7 and 3.4).

Based on the foregoing, therefore, summary judgment should be granted in favor of Defendants Sherman and Nolan on all of Plaintiff's claims against them, and they should be terminated from this case.

## b. Defendants Desio and Baldensperger

Plaintiff has also failed to support his claims against Defendants Desio and Baldensperger with any evidence demonstrating that they had any personal involvement in the alleged constitutional violations. In particular, Plaintiff has merely offered testimony that he and one or two other inmates asked Defendant Desio if he would agree to have all Sunni Muslim inmates at FCI-McKean placed on the common fare program for the 2006 Eid celebration. According to Plaintiff, Defendant Desio stated that he did not have a problem with the request, but that common fare participation would have to be granted by the chaplain, who ultimately denied the request. (ECF No. 71-18 at pp. 19-20 (internal pp. 132-134)). Plaintiff could not recall any further involvement by Defendant Desio. (Id. at p. 20 (internal p. 134)). Furthermore, Plaintiff confirmed at his deposition that Defendant Baldensperger was included in this lawsuit only because of his alleged role in requiring Plaintiff to purchase prayer oil from the commissary, an issue that has already been dismissed from this case. (See ECF No. 71-18 at p. 20 (internal p. 134); ECF No. 41, Memorandum Order, at p. 7).

Based on the foregoing, summary judgment should be entered in favor of Defendants Desio and Baldensperger on all of Plaintiff's claims against them, and they should be terminated from this case.

## 2. Qualified Immunity
The doctrine of qualified immunity insulates government officials from liability for

damages[6] insofar as their conduct does not violate clearly established rights. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In other words, "qualified immunity shields government officials from suit even if their actions were unconstitutional as long as those officials' action 'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Burns v. Pennsylvania Department of Corrections</u>, ___ F.3d ___, ___, 2011 WL 1486075, at * 9 (3d Cir. April 20, 2011) <u>quoting</u> <u>Harlow</u>, 457 U.S. at 818. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." <u>Burns</u>, at *9, <u>quoting</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, ___, 129 S.Ct. 808, 815 (2009).

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? <u>Saucier</u>, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. <u>See</u> <u>id.</u> In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. <u>Id.</u>

---

6

The defense of qualified immunity only applies to monetary damages and not to requests for injunctive relief. <u>Burns</u>, 2011 WL 1486075, at *12 ("Although qualified immunity bars Burns from seeking monetary compensation, he may still be entitled to injunctive relief. <u>See</u> <u>Harris v. Pernsely</u>, 755 F.2d 338, 343 (3d Cir. 1985)."). In this case, however, the only relief requested by Plaintiff is monetary damages.

<u>Curley v. Klem</u>, 278 F.3d 271, 277 (3d Cir. 2002).  <u>See</u> <u>also</u> <u>Doe v. Delie</u>, 257, F.3d 309 (3d Cir. 2001).[7]  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  <u>Id.</u>

     "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."  <u>Hope v. Pelzer</u>, 530 U.S. 730, 739 (2002).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Saucier</u>, 533 U.S. at 202.  In order for an official "to have 'fair warning' [...] that his or her actions violate a person's rights, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Burns</u>, at *9, <u>quoting</u> <u>United States v. Lanier</u>, 520 U.S. 259, 270 (1997) and <u>Anderson v. Creighton,</u> 483 U.S. 635, 640 (1987).  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Groh v. Ramirez, 540 U.S. 551, 56 (2004).

     The party asserting the defense of qualified immunity bears the burden of establishing it. <u>See</u> <u>Harlow</u>, 457 U.S. at 819.  "When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication."  <u>Ortiz v. Jordan</u>, ___ U.S. ___, ___, 131 S.Ct. 884, 889 (Jan. 24, 2011).

---

[7]

The rigid two-step inquiry set forth in <u>Saucier</u> was relaxed by the Supreme Court in <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808 (2009).  <u>See</u> <u>also</u> <u>Bumgarner v. Hart</u>, 2009 WL 567227 (3d Cir. 2009).  As the Supreme Court explained: "[b]ecause the two-step <u>Saucier</u> procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case."  <u>Pearson</u>, 555 U.S. at ___, 129 S.Ct. at 821.

### a. Defendants Gee, Buck and Recktenwald

Defendants argue that Plaintiff has failed to show that Defendants Gee, Buck, and Recktenwald violated a statutory or constitutional right, because Plaintiff merely alleges that said Defendants interfered with his filing of administrative remedies.  As a result, Defendants assert that the alleged conduct of Defendants Gee, Buck, and Recktenwald is shielded by the doctrine of qualified immunity.  In making this argument, however, Defendants overlook the fact that Plaintiff's allegations regarding the conduct of Defendants Gee, Buck, and Recktenwald are made in the context of a retaliation claim, which does implicate Plaintiff's constitutional rights.  In particular, Plaintiff alleges, *inter alia*, that "[t]here was no compelling reason for those acts and omissions by [Defendants Gee, Buck, and Recktenwald], other than to interfere, disrupt, and **retaliate** against Plaintiff for pursuing Administrative and Judicial Remedies concerning Plaintiff's religious exercise and other matters." (ECF No. 1, Complaint, at ¶ 4.31)(emphasis added).

Thus, Defendants' assertion of qualified immunity on behalf of Defendants Gee, Buck, and Recktenwald, is without merit, and their motion for summary judgment on this basis should be denied.

### b. Fifth Amendment Equal Protection Claim

Plaintiff claims that Defendants' denial of Halal meat for the 2006 Eid ceremonial feast violated his equal protection rights.  Defendants argue that they are entitled to qualified immunity regarding this claim because Plaintiff had no clearly established right to receive Halal meat for the Eid feast.[8]  Specifically, Defendants contend that the proper question is "whether the law had

---

[8]

A more generalized qualified immunity argument was raised in Defendants' earlier motion to dismiss in this case. (See ECF No. 20 at p. 22).  Upon consideration of that argument, this Court concluded that Defendants were not

clearly established by January 2006 a Muslim inmate's right to Halal meat for the ceremonial

meal on Eid-ul-Adha, or whether it was sufficient for prison authorities to provide other Halal

foods." (ECF No. 72, Defendants' Brief, at p. 17).

"The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). The Supreme Court has observed:

> for a constitutional right to be clearly established, **its contours must be
> sufficiently clear that a reasonable official would understand that
> what he is doing violates that right**. This is not to say that an official
> action is protected by qualified immunity unless the very action in
> question has previously been held unlawful; but it is to say that in the
> light of pre-existing law the unlawfulness must be apparent.

Hope, 536 U.S. at 739 (emphasis added)(citations omitted).

In light of the foregoing, the Court believes that the appropriate inquiry in this case is

whether a reasonable prison official would understand that denying Muslim inmates certain Halal

meat for the 2006 Eid-ul-Adha ceremonial meal was unlawful, in light of clearly established law

at the time. In this context, Plaintiff has not presented, nor has this Court found, any Supreme

Court or Third Circuit Court case holding that Muslim inmates have the right to Halal meals, let

alone to Halal meals that include Halal meat. "To the contrary, the majority of circuit and

district courts that have looked at this specific issue have concluded there is no such clearly

established right to Halal meals, with or without Halal meat, under the First Amendment's Free

Exercise of Religion Clause, RLUIPA or the Equal Protection Clause of the Fourteenth

---

entitled to qualified immunity because "the legal precedent regarding Plaintiff's right to equal protection under the Fifth Amendment... [was] clearly established at the time of the Defendants' alleged actions." (ECF No. 29, Report and Recommendation, at p. 28). Defendants now argue that the Court "defined the claimed equal protection right too broadly" and that the right "must be clearly established in a 'particularized' sense with reference to the facts in this case." (ECF No. 72, Defendants' Brief, at pp. 15-16). Upon further reflection, the Court agrees that a more narrow definition of the claimed right is necessary in this context. See Wilson v Layne, 526 U.S. 603, 615 (1999), citing Anderson v Creighton, 483 U.S. 635, 641 (1987)("right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").

Amendment." Thompson v. Williams, 2007 WL 3244666 at *22 (W.D.Wash. Oct. 31, 2007)(granting defendants qualified immunity), citing, inter alia, Williams v. Morton, 343 F.3d 212, 216-22 (3d Cir. 2003); Cochran v. Schotten, 172 F.3d 47 (6th Cir. 1998); Bilal v. Lehman, 2006 WL 3626808 at *6-7 (W.D.Wash. Dec. 8, 2006)(finding lack of clearly established law regarding Muslim inmate's right to a diet specifically including Halal meat); Hudson v. Malony, 326 F.Supp.2d 206, 211-214 (D.Mass 2004)(officials who did not provide Halal meat as part of Muslim diet entitled to qualified immunity). See also Pratt v. Corr. Corp. of America, 267 Fed.Appx. 482 (8th Cir. 2008)(prison not required to provide diet with Halal meat where other Halal food was provided); Patel v. United States Bureau of Prisons, 515 F.3d 807 (8th Cir. 2008)(BOP not required to provide Halal meals); Jihad v. Fabian, 2011 WL 1641885 at *15 (D.Minn. Feb. 17, 2011)(finding no clearly established right to prepackaged Halal meals based on religious beliefs); Lewis v. Ryan, 2008 WL 1944112 at *31 (S.D.Cal. May 1, 2008) (defendants entitled to qualified immunity because Muslim inmate's right to be served Halal meals was not clearly established).

Based on the overwhelming case authority cited above, the Court finds that, even today, the law is not clearly established regarding a Muslim inmate's right to receive Halal meat at any time. Thus, Defendants could not have understood that denying Muslim inmates certain Halal meat for the 2006 Eid-ul-Adha ceremonial feast was unlawful, especially in light of the fact that other Halal foods were readily available from the main food line or the common fare program. Accordingly, Defendants are entitled to qualified immunity as to Plaintiff's Fifth Amendment equal protection claim, and summary judgment should be entered in their favor on such claim to the extent they are being sued in their individual capacities. To the extent Defendants are sued in their official capacities, however, Plaintiff's equal protection claim must be considered on its merits.

### 3. Equal Protection

The Equal Protection Clause provides that no state shall "deny to any person ... the equal protection of its laws." U.S. Const. Amend. XIV, §1. All persons "similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "In order to state an equal protection claim, plaintiff must show that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." Caldwell v. Fogel, 2009 WL 3048558 at *10 (W.D.Pa. Sept. 21, 2009).

Here, Plaintiff's equal protection claim is based solely on his treatment as a Sunni Muslim as compared to other religiously active inmates at the prison. Specifically, Plaintiff alleges that Defendants provided kosher items to Jewish inmates for Passover while denying his requests for Halal meat, thereby violating his equal protection rights. (Complaint at ¶¶ 4.20 and 4.21). Plaintiff also alleges that Defendants "purchased and provided Kosher items and meats for the Jewish inmates for their Passover and their other ceremonial occasions" and Defendants "also purchased and provided special food and items for other faith groups and secular holidays, such as New Years, Easter Sunday, the Fourth of July, and Labor Day, Thanksgiving, and Christmas." Id.

Defendants argue that Plaintiff has failed to adduce any evidence that Defendants were motivated by a discriminatory intent when they denied certain Halal meat for the 2006 Eid-ul-Adha ceremonial feast. The Court agrees. The mere fact that a deliberate choice was made by Defendants to deny certain Halal meat for the 2006 Eid celebration, while special Kosher foods were provided to Jewish inmates at Passover, does not in itself mean that the choice was made with discriminatory intent. See Brown v. Byrd, 2000 WL 1780234 at *4 (E.D.Pa. Dec. 1, 2000), citing Arlington Hts. v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 264-65 (1977)("in order to demonstrate a violation of the Equal Protection clause, a plaintiff must show more than

discriminatory impact....  Rather, '[p]roof of ... discriminatory intent or purpose is required'").  Plaintiff has not identified any evidence suggesting a discriminatory purpose.  Instead, the record evidence demonstrates that the denial of Halal meat for the 2006 Eid celebration was due to budgetary constraints, which "constrained [FCI-McKean's Religious Services Department] from purchasing traditional or cultural food items for any religious group during the 2006 fiscal year, including Halal meat for the Eid-ul-Adha feast." (ECF No. 33-3, Supplemental Declaration of Jan Olowin, at ¶ 17).

Thus, because Plaintiff has failed to present any facts demonstrating discriminatory intent, summary judgment should be entered in favor of Defendants with regard to Plaintiff's equal protection claim against them in their official capacities.

### 4.    RFRA

Under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ("RFRA"), the "government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."  42 U.S.C. § 2000bb-1(a).[9]  In order to establish a *prima facie* case, a plaintiff must show that his "exercise of religion" was "substantially burdened."  42 U.S.C. 2000bb-1(a).[10]  Once a plaintiff establishes a *prima facie* case under the RFRA, the burden shifts to the government to demonstrate that "application of the burden" to the plaintiff "is in furtherance of a compelling governmental interest" and "is the least restrictive

---

9

In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court held that the RFRA is unconstitutional as to state and local governments; however, Flores has not been interpreted to preclude RFRA claims against the federal government.  See generally, Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006).

10

Although the RFRA does not define the term "substantial burden," the Third Circuit has held within the context of the analogous RLUIPA that a "substantial burden exists where 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or ) 2 the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Norwood v. Strada, 249 Fed. Appx. 269, 2007 WL 2848036, at *1 (3d Cir. 2007) quoting Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007).

18

means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(b)(1-2).

Plaintiff's remaining RFRA claims in this case are that Defendants prevented him from attending the 2006 Eid celebration by allegedly omitting his name from the call-out list for the event, and failed and/or refused to place his name on the call-out list for the Jumu'ah prayer service for a period of three months. (ECF No. 1, Complaint, at ¶ 10.1).  The Court previously determined that Plaintiff set forth a *prima facie* case for each claim under RFRA.

Defendants now move for summary judgment on these claims, arguing that, to the extent they are being sued in their official capacities for monetary damages, they are entitled to sovereign immunity.  In support of this argument, Defendants cite the recent case of <u>Jean Pierre v. Bureau of Prisons</u>, Civil Action No. 09-2661J, 2010 WL 3852338 (W.D.Pa. July 30, 2010)(Lenihan, M.J.), <u>adopted in</u> 2010 WL 3834872 (W.D.Pa. Sept. 27, 2010)(Gibson, J.), wherein  Magistrate Judge Lenihan found that "the majority of courts ... have concluded that while RFRA and RLUIPA waive sovereign immunity as to suits against the [federal] government for some type of remedy, such waiver does not extend to suits for monetary damages."  <u>Id</u>. at *5. The primary case cited by Magistrate Judge Lenihan in this regard is <u>Webman v. Fed. Bureau of Prisons</u>, 441 F.3d 1022 (D.C.Cir. 2006), in which the D.C. Circuit Court of Appeals found that although RFRA had clearly waived federal immunity as to some forms of relief, the statute's reference to "appropriate relief" was "not the 'sort of unequivocal waiver'" sufficient to extend the waiver of immunity to claims for monetary damages.  <u>Id</u>. at  1025-26, <u>quoting</u> <u>Lane v. Pena</u>, 518 U.S. 187, 198 (1996).  As a result, the <u>Webman</u> court held that "RFRA does not waive the federal government's sovereign immunity for damages."  <u>Id</u>. at 1026.  "Other courts, including our court of appeals, have come to the same conclusion as to RLUIPA's identical language." <u>Jean Pierre</u>, 2010 WL 3852338 at *5, <u>citing</u> <u>Nelson v. Miller</u>, 570 F.3d 868 (7th Cir. 2009); <u>Sossamon v. The Lone Star State of Texas</u>, 560 F.3d 316, 331 (5th Cir. 2009); <u>Scott v. Beard</u>, 252 Fed. Appx. 491, 492-93 (3d Cir. 2007) (holding without discussion that the Eleventh Amendment bars official capacity damages under RLUIPA); <u>Madison v. Virginia</u>, 474 F.3d 118,

19

130-33 (4th Cir. 2006).

This Court finds the discussion in both <u>Jean Pierre</u> and <u>Webman</u> persuasive. Accordingly, the Court finds that Defendants are immune from Plaintiff's RFRA claims to the extent they are being sued in their official capacities.[11]  In addition, the Court agrees with Magistrate Judge Lenihan's note in <u>Jean Pierre</u> that "neither RFRA nor RLUIPA support damage claims against government officials in their individual capacit[ies]."  <u>Jean Pierre</u>, 2010 WL 3852338 at *6 n. 4, <u>citing</u> <u>Nelson</u>, 570 F.3d at 885-89; <u>Rendelman v. Rouse</u>, 569 F.3d 182, 187-88 (4th Cir. 2009); <u>Sossamon</u>, 560 F.3d at 327-29; <u>Smith v. Allen</u>, 502 F.3d 1255, 1272-73 (11th Cir. 2007); <u>Porter v. Beard</u>, 2010 WL 2573878, at *6 (W.D.Pa. May 12, 2010); <u>Logan v. Lockett</u>, 2009 WL 799749 at *4 (W.D.Pa. Mar. 25, 2009).  Thus, there can bo no liability for damages against any of the Defendants in their individual capacities, as well.

For the foregoing reasons, therefore, summary judgment should be granted in favor of Defendants on Plaintiff's remaining RFRA claims.


**5.**    **Retaliation**

Plaintiff claims that Defendants retaliated against him for filing requests to staff, administrative grievances and a lawsuit regarding the 2005 Eid-ul-Adha celebration by: (i) removing and/or omitting his name from the call-out list for the 2006 Eid celebration; (ii) failing and/or refusing to place his name on the call-out list for Jumu'ah services for a period of three months; and (iii) refusing to process his grievances and inmate requests in accordance with policy.  The latter claim is made against Defendants Buck, Gee, and Recktenwald, while

---

[11]

As noted earlier, the only relief sought by Plaintiff is monetary damages.

the first two claims remain against only Defendants Olowin, Grimm, and Roberts.[12]

Retaliation for the exercise of one's constitutional rights is a separate matter, requiring a distinct legal analysis. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

> In order to state a prima facie case of retaliation, a prisoner must demonstrate:
> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials[13]; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in

---

[12]

As discussed earlier, Plaintiff also implicated Defendants Sherman, Nolan, and Desio in his first two retaliation claims; however, this Court has already found that these Defendants cannot be held liable because they lacked the requisite personal involvement. (See supra, Section C1).

[13]

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

the decisions to discipline him.[14]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities.  Carter, 292 F.3d at 158.  "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.  In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

        This Court previously found that Plaintiff met the first prong of a retaliation claim, as filing lawsuits, grievances, requests to staff, and complaints are clearly protected forms of free speech under the First Amendment.  This finding is not in dispute.  The Court also found that Plaintiff's allegations regarding adverse action, and the alleged causal connection between the constitutionally-protected activity and the alleged adverse action, were sufficient to satisfy the second and third prongs of a *prima facie* case of retaliation.  Accordingly, Defendants' prior motion to dismiss the foregoing retaliation claims was denied. (See ECF No. 29, Report and Recommendation, at pp. 25-26).

        Defendants now argue, however, that the facts since adduced during discovery

---

[14]

In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions.  "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

demonstrate that Plaintiff cannot establish either the second or third prong of a *prima facie* case of retaliation.

### a. Adverse Action

To satisfy the second prong, Plaintiff must show that the alleged retaliatory acts rose to the level of adverse action. This means that Plaintiff's allegations must be sufficient to demonstrate that the adverse consequences he allegedly suffered would deter a person of ordinary firmness from engaging in constitutionally protected activity. Defendants contend that Plaintiff has failed to satisfy this prong because he cannot show that any of the alleged retaliatory conduct rises to the level of "adverse action."

### i. Refusal to Process Grievances According to Policy

Defendants Gee, Buck, and Recktenwald argue that their alleged refusal to process Plaintiff's grievances and inmate requests in accordance with policy did not constitute an adverse action because Plaintiff had no constitutional or statutory right to an administrative remedy process, and he has failed to show that he was actually injured as a result of the alleged refusal. However, neither of these facts is dispositive of the issue of whether a prisoner of ordinary firmness would be deterred from exercising his constitutional rights if his grievances were not processed according to policy. In fact, it is more likely that a prisoner might give up filing grievances if he knows they will not be processed. Defendants argue further that Plaintiff did not suffer an adverse action in this regard because the evidence shows that Plaintiff's grievances were appropriately processed. In support of this argument, Defendants cite the Declaration of Vanessa Herbin-Smith, who states that Plaintiff filed thirty-three (33) grievances during his time at FCI-McKean (ECF No. 71-1 at ¶ 4); however, the mere fact that Plaintiff filed thirty-three grievances does not conclusively establish that they were processed correctly, nor does it defeat the possibility that Defendants refused to process other grievances and inmate requests Plaintiff may

have attempted to file.[15]  Thus, there remains a genuine issue of material fact as to whether Plaintiff suffered an adverse action as a result of Defendants' alleged refusal to process his grievances and inmate requests according to policy.

### ii.    Omission From Call-Outs for 2006 Eid Celebration and Jumu'ah Prayer Service

Defendants contend that the alleged omission of Plaintiff's name from call-outs for the 2006 Eid celebration and Jumu'ah prayer services did not constitute adverse action because Plaintiff "could have timely attended these events despite the alleged omissions." (ECF No. 72, Defendants' Brief, at p. 37).

With regard to the Eid celebration, Defendants argue that "even assuming that plaintiff's name had been omitted from the call-out for the 2006 Eid, plaintiff could have attended the service pursuant to FCI-McKean's practice of releasing inmates to appointments when an inmate advises his supervisor that the inmate should have been on the call-out list." (Id. at p. 33). However, Plaintiff testified that he did inform his supervisor that he should have been on the call-out list for the 2006 Eid as soon as he reported to work that morning, but was told he would be released to attend the Eid celebration only after the morning census was completed, which Plaintiff testified took "longer than usual" that morning.  As a result, Plaintiff claims that he was released too late to attend both the community prayer and sermon for the Eid-ul-Adha. (ECF No. 71-18 at pp. 24-25 (internal pp. 163-67)).  Defendants have presented no evidence to contradict Plaintiff's testimony in this regard; they simply ask this Court to discredit it.  This the Court will not do, as the credibility of witness testimony is the province of the fact finder.

---

15

In fact, Ms. Herbin-Smith acknowledges that "[d]ue to space limitations, copies of rejected administrative remedies are not retained, except for requests that are marked as 'sensitive.'" (ECF No. 71-1 at p. 2 n. 1).  Thus, there is no documentary evidence of record to conclusively refute Plaintiff's claim that his administrative remedies were rejected improperly.

Defendants argue further that Plaintiff cannot demonstrate that he suffered any adverse religious consequences as a result of missing the congregational prayer and sermon on Eid-ul-Adha, because both are merely recommended and not obligatory for Sunni Muslims. Plaintiff counters, however, that it is his "sincerely held belief, interpretation, and practice that it's a central requirement to follow the Sunnah or 'Traditions/Customs' of Prophet Muhammad," including "the *Salut ul Eid* (community prayer for the Eid), [and] *Khulbah al Eid* (sermon mention from the Eid),... during the Eid-ul-Adha celebration." (ECF No. 78-18, Plaintiff's Declaration, at ¶ 1.3). Thus, there remains a genuine issue of material fact as to whether Plaintiff suffered an adverse action as a result of Defendants' alleged omission of his name from the call-out list for the 2006 Eid celebration.

With regard to the alleged omission of Plaintiff's name from the call-out list for Jumu'ah prayer service, Defendants similarly argue that "because of the practice at FCI McKean in which supervisors allow inmates to keep appointments if the inmates assert that they should have been listed on the call-out sheet, no reasonable jury would find that plaintiff had to miss Jumu'ah services even if his name had been omitted from the call-out sheet." (ECF No. 72, Defendants' Brief, at p. 34). This argument glosses over Plaintiff's claim that he had submitted written requests to be called-out for Jumu'ah services over a period of three months, yet was not placed on the list, thus requiring him to report to work each Friday that the prayer service was scheduled to be held. Moreover, Plaintiff testified that he sought permission from his supervisor to be released from work for the Jumu'ah prayer service each time his name was omitted from the call-out list, but each week the prayer service was finished by the time he was released from work. (ECF No. 71-18 at pp. 30-31 (internal pp. 184-88)). Defendants have failed to present any evidence to counter this testimony; rather, they simply argue that no reasonable jury would "credit any testimony that the count was delayed each Friday for a period of three months." (ECF No. 72, Defendants- Brief, at p. 34). This argument is unavailing. Based on the record, the Court is unable to determine, as a matter of law, that Plaintiff was, in fact, able to attend Jumu'ah prayer

services despite the omission of his name from the call-out list.

Nonetheless, Defendants argue further that Plaintiff did not suffer any adverse religious consequences as a result of his failure to attend Jumu'ah prayer services due to the omission of his name from the call-out list. In support of this argument, Defendants have submitted the Declaration of Christopher Buck, Ph.D., an "independent scholar trained in the academic study of religion and in Islamic studies," who opines that "a Muslim who has a valid excuse for nonperformance will *not* be held accountable for missing group prayer," and that Islamic law permits a Muslim to make up a missed Jumu'ah prayer. (ECF No. 71-17, Declaration of Christopher Buck, Ph.D., at pp. 1, 11-12). Plaintiff has countered with a Declaration from Imam Yahya Abdul Latif, acting Imam and spiritual advisor for Masjid al Hashar in Philadelphia, Pennsylvania, who declares that "[o]nce an individual (intentional/un-intentional) miss[es] the *Jumu'ah*,... the physical, mental, and spiritual rewards and blessings attained by perform[ing] them at their specific prescribed time and manner are gone forever, and can never be made up. Moreover, the individual must seek atonement for missing those acts of worship." (ECF No. 78-1, Declaration of Imam Yahya Abdul Latif, at p. 6). Thus, there is a genuine issue of material fact as to whether Plaintiff suffered an adverse action as a result of his omission from the call-out list for Jumu'ah prayer services for a period of three months.

Based on the foregoing, Defendants motion for summary judgment as to Plaintiff's retaliation claims, based upon Plaintiff's alleged failure to demonstrate adverse action, should be denied.

### b.        Causal Connection

To satisfy the third prong of his retaliation claim, Plaintiff must allege a causal connection between his constitutionally protected activity of filing complaints and grievances and the adverse actions he allegedly suffered at the hands of the Defendants. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity

between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)(citations omitted). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." Id. quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000). The Third Circuit has emphasized that courts must be diligent in enforcing these causation requirements. Id.

This Court previously found that "Plaintiff has alleged, at least, a temporal proximity between the administrative remedies he filed and Defendants' alleged adverse actions to suggest a causal link sufficient to satisfy the third prong of his retaliation claim." (ECF No. 29, Report and Recommendation, at p. 26). This finding was made in the context of determining whether Plaintiff's initial pleading was sufficient to state a *prima facie* claim of retaliation. Defendants now argue that, "in the circumstances of this case, the evidence is insufficient to infer a causal connection based simply on temporal proximity." (ECF No. 72, Defendants' Brief, at p. 37). Thus, a summary of the evidentiary record is in order.

### i.     Evidentiary Record

The evidence in this case indicates that on or about October 9, 2005, Plaintiff and other Sunni inmates submitted an Inmate Request to Defendant Olowin requesting that Halal lamb be served at their Eid-ul-Adha ("Eid") celebration in January 2006. (ECF No. 1, Complaint, at Exhibit A). On November 13, 2005, Plaintiff submitted Informal Resolution Form No. BA-05-008, requesting a response to the Inmate Request of October 9, 2005. (Id. at Exhibit A2). On or about November 15, 2005, Counselor Tim Holt responded to the Informal Resolution, stating that "[t]he Eid holy day in January 2006 is approved, as well as the ceremonial meal." (Id.).

According to Plaintiff's sworn Declaration, Plaintiff and other Sunni inmates subsequently met with "the Chaplains" on November 18, 2005, to "finish the discussion of the 2006 Eid-ul-Adha and other matters concerning the Sunni community." (ECF No. 78-18, Plaintiff's

Declaration, at ¶ 2.1). At this meeting, Plaintiff declares that Defendant Olowin handed a memo dated November 4, 2005, to Jomo Williams, the spokesman for the inmate Muslim community, advising him that Halal lamb would not be provided, and that "all ceremonial meals must be prepared from food items available on the FCI McKean institutional list." (See ECF No. 71-11).

Plaintiff then submitted Informal Resolution Form No. BA-05-010, on November 26, 2005, "requesting that the Sunni Muslims be provided with halal meats and food in accordance with their religious dietary restriction for their Ceremonial Meal in Jan. 2006." (ECF No. 1, Complaint, at Exhibit A3, p. 1). Counselor Holt responded to this Informal Resolution on December 15, 2005, indicating that the issue had already been addressed in Defendant Olowin's memo, and that "all ceremonial meals must be prepared from food items available on the FCI McKean institutional list." (Id. at p. 3). Plaintiff then filed an Administrative Remedy Request, dated December 26, 2005, again requesting Halal meats and food items for the Eid celebration, which was scheduled for January 10, 2006. (ECF No. 1, Complaint, at Exhibit A3a). This Request was received by the Warden's office at FCI-McKean on January 6, 2006. (Id.; ECF No. 71-1, Declaration of Vanessa Herbin-Smith, at ¶ 5). On January 13, 2006, Defendant Recktenwald issued a Rejection Notice indicating that Plaintiff's January 6, 2006, Request was being rejected as untimely.

On or about January 23, 2006, Plaintiff submitted Informal Resolution No. BA-05-020 to Defendant Buck grieving the denial of Halal meat for the 2006 Eid feast, and the omission of his name from the call-out list for the Eid ceremonial activities on January 10, 2006. (ECF No. 1, Complaint, at Exhibit A4). Defendant Buck issued an Informal Resolution Response on January 25, 2006, stating that '[a]n investigation reveals the meal was offered to you and your religious community, but since you were not able to have lamb the religious leaders refused the meal." (Id.). Plaintiff then filed a nearly identical Administrative Remedy Request on January 25, 2006, which was denied by Defendant Nolan on March 3, 2006. (ECF No. 1, Complaint, at Exhibit A5).

In the interim, Plaintiff submitted an Inmate Request to Defendant Gee on February 7,

2006, requesting disposition of another Informal Resolution he submitted to Defendant Buck on January 25, 2006, regarding the Rejection Notice he received from Defendant Recktenwald on January 13, 2006. (Id. at Exhibit B1). After Defendant Gee failed to respond to this Inmate Request, Plaintiff filed an Administrative Remedy Request on or about February 23, 2006, grieving the Rejection Notice of January 13, 2006, as well as Defendant Gee's failure to respond to his Inmate Request of February 7, 2006. (Id. at Exhibit B2). This Administrative Remedy Request was rejected by Defendant Recktenwald on March 3, 2006. (Id. at Exhibit B2b).

Plaintiff has also declared that he submitted Inmate Requests to Staff on January 18, 2006, February 15, 2006, and March 8, 2006, requesting to be placed back on the call-out list for Jumu'ah prayer services, but his name was still omitted from the call-out list during those months.[16] (ECF No. 78-18, Plaintiff's Declaration, at ¶¶ 3.3, 3.4, 3.5, 3.7). Plaintiff declares further that on March 23, 2006, he met with Defendants Olowin and Grimm and informed them that he had submitted more than two Inmate Requests to Staff and requested several more times to be included on the call-out list for Jumu'ah prayer services during the months of January, February and March 2006, but was still not included on the list during these months. (Id. at ¶ 3.6). According to Plaintiff, his name was finally placed back on the Jumu'ah call-out list on April 7, 2006. (Id. at ¶ 3.8).

### ii.      Omission from Call-out Lists for 2006 Eid Celebration and Jumu'ah Prayer Services

Based on the foregoing record, it is evident that Plaintiff's omission from the call-out list for the Eid celebration on January 10, 2006, occurred only four days after his December 26, 2005 Administrative Remedy Request was received by the Warden's office. Similarly, the record

---

[16]

Plaintiff has submitted copies of the Inmate Requests that were purportedly submitted on the dates indicated, but none of the copies contains either a staff member's signature or disposition information that would evidence receipt of the Request. (See ECF No. 78-9, Exhibits 9c and 9g; ECF No. 1, Complaint, Exhibit C).

indicates that Plaintiff's first Inmate Request to Staff regarding the omission of his name from the call-out list for Jumu'ah prayer services was dated January 18, 2006. Thus, it is apparent that Plaintiff's name was omitted from the Jumu'ah call-out list at or around the same time the Warden received his December 26, 2005, Administrative Remedy Request. In each instance, the Court finds there to be "an unusually suggestive temporal proximity" from which a causal connection may be inferred between the protected activity of filing a grievance and the allegedly retaliatory actions of omitting Plaintiff's name from the call-out lists at issue. Lauren W., 480 F.3d at 267. Defendants' motion for summary judgment in their favor as to these claims, based upon the alleged lack of causal connection, should be denied.

### iii. Refusal to Process Plaintiff's Administrative Requests According to Policy

Although there was a close temporal proximity between the receipt of Plaintiff's December 25, 2006, Administrative Remedy Request on January 6, 2006, and Defendant Recktenwald's Rejection Notice of January 13, 2006, it cannot be said that the Rejection Notice was issued in retaliation for Plaintiff's filing of a grievance; rather, it was issued in response to said grievance, indicating that the grievance was untimely. Since a response to an Administrative Remedy Request must be issued within a short time frame (20 days), there is nothing unusually suggestive about the temporal proximity between a grievance and the response thereto, from a causation standpoint. Even further removed from an "unusually suggestive temporal proximity" are the challenged actions of Defendants Gee and Buck, which occurred from on or about January 25, 2006, through February 2006. See, e.g., Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003)(temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of wrongdoing); Killen v. N.W. Human Servs., Inc., 2007 WL 2684541, at *8 (E.D.Pa. Sept. 7, 2007)(holding that temporal proximity of seventeen days was insufficient to establish causation).

Thus, Plaintiff cannot rely on the "unusually suggestive temporal proximity" of the alleged actions of Defendants Recktenwald, Gee, and Buck to establish causation. Rather, Plaintiff must demonstrate either "a pattern of antagonism coupled with timing to establish a causal link," or "[i]n the absence of that proof ... that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." Lauren W., 480 F.3d at 267 (citations omitted). It is apparent from the evidence of record that Plaintiff cannot do so. Therefore, Defendants' motion for summary judgment as to Plaintiff retaliation claim against Defendants Recktenwald, Gee, and Buck should be granted, and said Defendants should be terminated from this case.

### III.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to for summary judgment [ECF No. 70] be granted in part and denied in part, as follows:

1. Summary judgment should be granted in favor of Defendants Sherman, Nolan, Desio, and Baldensperger as to all claims, based upon their lack of personal involvement in any alleged constitutional violation, and said Defendants should be terminated from this case;

2. Summary judgment should be granted in favor of all remaining Defendants on Plaintiff's Fifth Amendment equal protection claim;

3. Summary judgment should be granted in favor of all remaining Defendants on Plaintiff's RFRA claims, on the basis of sovereign immunity;

4. Summary judgment should be granted in favor of Defendants Recktenwald, Gee, and Buck on Plaintiff's retaliation claim regarding the alleged refusal to process his administrative remedies according to policy, and said Defendants should be terminated from this case; and

5. Summary judgment should be denied with regard to Plaintiff's retaliation claims against remaining Defendants Olowin, Grimm, and Roberts regarding the alleged omission of Plaintiff's name from the call out lists for the 2006 Eid celebration and the Jumu'ah prayer services during the months of January, February and March 2006.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of some appellate rights.  <u>See</u> <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: June 17, 2011

cc:      The Honorable Sean J. McLaughlin
         United States District Judge